

FILED
2015 AUG -4  PM 5: 16
CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § | CRIM NO: A-12-CR-210DEW |
| Plaintiff, | § § § § § | **SECOND SUPERSEDING INDICTMENT**<br>[Ct. I – Vio: 18 U.S.C. § 1956(h)} –<br>Conspiracy to Launder Monetary<br>Instruments} |
| v. | § § | |
| MIGUEL ANGEL TREVINO<br>MORALES (1)<br>    aka "40"<br>OSCAR OMAR TREVINO<br>MORALES (2)<br>    aka "42"<br>FRANCISCO ANTONIO COLORADO<br>CESSA(6)<br>    aka "Pancho"<br>LUIS GERARDO AGUIRRE (15),<br>ERICK JOVAN LOZANO DIAZ (16) | § § § § § § § § § § § § § | |
| Defendants. | § | |

COUNT I
Conspiracy to Launder Monetary Instruments
{Title 18 United States Code § 1956(h)}

THE GRAND JURY CHARGES:

INTRODUCTION

At various times material to this indictment:

Defendants, **MIGUEL ANGEL TREVINO MORALES(1), OSCAR OMAR**

**TREVINO MORALES(2), FRANCISCO ANTONIO COLORADO CESSA(6), LUIS**

**GERARDO AGUIRRE (15), ERICK JOVAN LOZANO DIAZ (16)** and others, were members of a money laundering conspiracy using proceeds derived from the sale of cocaine, marijuana and other illegal narcotics by an organization known as LOS ZETAS.

LOS ZETAS Drug Cartel is a powerful drug organization operating out of Mexico which funnels thousands of kilos of cocaine and other narcotics into the United States each year. LOS ZETAS are the largest drug cartel in Mexico in geographical presence and control 11 states within Mexico. The organization is based in the city of Nuevo Laredo, Tamaulipas, directly across the border from Laredo, Texas. The huge-scale drug trafficking of this organization generates multi-million dollar revenues. LOS ZETAS funnels drug proceeds from Miguel Angel Trevino Morales, a.k.a. "40," (hereafter referred to either by first and last name or just "40") and his brother Oscar Omar Trevino Morales, a.k.a. "42," (hereafter referred to either by first and last name or just "42") into the United States. "40," and "42" are the two co-leaders of LOS ZETAS. The numbers associated with some ZETA leaders' names were first assigned at the inception of LOS ZETAS as a carryover from their military call signs. The numbers generally show members' rank within the criminal organization (the "3," therefore, would demonstrate third in rank in the overall organization when LOS ZETAS was first organized). In the last several years, however, killings and captures have eliminated those previously designated as higher ranking members, and "40" and "42" have now assumed top leader status.

"40" and his brother "42" utilized another brother living within the United States, JOSE TREVINO MORALES, as well as other contacts to help launder their drug money through the purchase of American Quarter Horses. The ownership of the horses and the source of the funds to purchase the horses were placed in various nominee names to disguise "40's" and "42's" connection to these assets. Nominees are real or fictitious persons or entities that were used

instead of the real and true owner. This helped legitimize the appearance of their drug money since horse racing is a legal activity and also provides "40," "42," and those working with them free standing assets that can later be sold or "cashed in." It also generates legitimate looking income during the intervening time period. The money laundering network of this conspiracy reached from the United States/Mexico border to numerous locations in and near Austin, Texas, and elsewhere.

Telephones were utilized extensively by members of the conspiracy in order for co-conspirators to coordinate aspects of their money laundering. Co-conspirators would attend quarter horse auctions to purchase racing quarter horses. Via electronic and wire communications, members of the conspiracy would coordinate the purchase of various racing quarter horses and the payment of boarding, breeding and racing fees using the proceeds derived from the sale of illegal narcotics.

## OBJECTIVE OF THE CONSPIRACY

It was the object of the conspiracy to launder U.S. currency gained from the sale of illegal controlled substances by LOS ZETAS to purchase, breed, train and race quarter horses in the United States and Mexico.

## MANNER AND MEANS

For all periods of time relevant to the charges contained in this Indictment, the defendants and other co-conspirators, both known and unknown to the Grand Jury, used the following manner and means to accomplish the goals of the conspiracy:

A. The defendants were members or associates of a transnational drug trafficking organization or cartel based in Mexico known as "LOS ZETAS."

B. Under the direction **of MIGUEL and OMAR TREVINO MORALES**, Los Zetas controlled hundreds of miles of Mexican territory along the border of Mexico and the United States, which they used to conduct their drug trafficking and money laundering operations.

C. Los Zetas divided their territory into areas known as "plazas" along the Mexico-United States border and assigned each plaza region a leader known as a "plaza boss."

D. Los Zetas would direct the transportation of cocaine, marijuana and other controlled substances shipments via boats, planes, and automobiles from Colombia and Venezuela via Central America to various cities and "plazas" in Mexico.

E. "Plaza bosses" would then transport shipments of cocaine, marijuana as well as other illegal narcotics via motor vehicles and other means from Mexico to cities in Texas for distribution within Texas and to other cities within the United States.

F. Proceeds from the sale of illegal narcotics in the United States would be transported from the United States to Mexico via bulk cash shipments. These cash shipments would be delivered to the "plaza bosses" for counting and distribution to promote the continuing distribution of illegal narcotics and to launder illegal proceeds through various activities. Included amongst these activities were investments in racing quarter horses purchased via bulk currency payments, wire transfers, checks from businesses established by the organization, structured deposits and bulk currency deposits. The Quarter Horse is an American breed of race horse that is bred to sprint short distances ranging from 220 to 870 yards. Quarter horses are raced primarily in the Southwest United States and California.

G. **MIGUEL and OSCAR TREVINO MORALES** would direct portions of the bulk cash derived from the sale of illegal narcotics to their brother, **JOSE TREVINO MORALES** and others, for the purchase, training, breeding and racing of quarter horses in the United States.

H. The defendants and other members of Los Zetas utilized Nextel "push-to-talk" telephones, Blackberry and UHF/VHF radio communications to coordinate their money laundering activities through the horse racing industry and to evade law enforcement surveillance.

I. The defendants, along with other members of Los Zetas, organized, directed, and carried out various acts of violence against Mexican law enforcement officers and rival drug traffickers to retaliate against and to intimidate any individual or individuals who interfered with or who were perceived to potentially interfere with the narcotics trafficking or money laundering activities of Los Zetas to include the laundering of proceeds via the American Quarter Horse racing industry.

J. The individual roles performed within Los Zetas organization by each of the defendants were as follows:

1. **MIGUEL ANGEL TREVINO MORALES**, a.k.a. "40," a.k.a. "Zeta 40,"a.k.a. "Cuarenta." **MIGUEL TREVINO** is the ranking member of Los Zetas and is recognized as the leader of Los Zetas. **MIGUEL TREVINO** was actively involved in managing the activities of Los Zetas Drug Cartel in Mexico, including the coordination of cocaine and marijuana shipments from South America via Central America into the United States, as well as the receipt of bulk currency shipments into Mexico from the United States. He was actively involved in the management of the quarter horse activities, including directing funds to pay for the purchase, breeding, training and racing of the quarter horses.

2. **OSCAR OMAR TREVINO MORALES**, a.k.a. "Omar," a.k.a. "42," a.k.a. "Cuarenta dos." **OMAR TREVINO** has a leadership role and oversees Los Zetas activities in Mexico. **OMAR TREVINO** was actively involved in managing the activities of Los Zetas Drug

Cartel in Mexico, including the coordination of cocaine and marijuana shipments into the United States, as well as the receipt of bulk currency shipments into Mexico from the United States. He was actively involved in the management of the quarter horse activities, including directing funds to pay for the purchase, breeding, training and racing of the quarter horses.

3. *JOSE TREVINO MORALES.* **JOSE TREVINO MORALES** is the brother of **MIGUEL and OMAR TREVINO MORALES** and was actively involved in managing the activities of money laundering operation in the United States posing as a "legitimate" quarter horse owner. His activities included the coordination of purchasing, training and racing quarter horses using bulk currency, wire transfers, checks from businesses established by the organization, bulk currency deposits, and structured payments from Mexico into the United States. **JOSE TREVINO** and his wife Defendant, **ZULEMA TREVINO** created TREMOR ENTERPRISES, LLC, 66 LAND, LLC, and ZULE FARMS, LLC, which were business entities for the purpose of promoting the money laundering activities.

4. *CARLOS MIGUEL NAYEN BORBOLLA*, a.k.a. "Carlito;" a.k.a., "Pilotos." **NAYEN** was actively involved in managing the activities of money laundering operations in the United States, including the coordination of purchasing, training and racing quarter horses using bulk currency, wire transfers, checks from businesses established by the organization, bulk currency deposits, and structured payments from Mexico into the United States. NAYEN was responsible for arranging the various payments to various trainers and boarding facilities for the organization's horses. NAYEN is listed as an officer of CARMINA, LLC., a business entity, which is a front company for Los Zetas' money laundering activities used to conceal and disguise the ownership of quarter horses.

5. *ZULEMA TREVINO.* **ZULEMA TREVINO** is the spouse of **JOSE TREVINO**. **ZULEMA TREVINO** is listed as an officer of TREMOR ENTERPRISES, LLC., 66 LAND, LLC., and

ZULE FARMS, LLC., which are front companies for Los Zetas' money laundering activities used to conceal and disguise the ownership of quarter horses. **ZULEMA TREVINO** was responsible for the financial accounts of the various entities controlled by her and Defendant **JOSE TREVINO MORALES** and management of the organization's operations in Lexington, Oklahoma.

6. *FRANCISCO ANTONIO COLORADO CESSA*, a.k.a. "Pancho." **CESSA** was a Mexican business man operating as a straw purchaser for **MIGUEL** and **OMAR TREVINO MORALES**. CESSA would act as a straw purchaser for various horses. He would make payments via personal check, checks from businesses established by the organization and wire transfers for the purchase and also the boarding and training of quarter-horses. **CESSA** controls ADT PETROSERVICIOS, MTTM and TRESCO, business entities, which were front companies for Los Zetas' money laundering activities used to conceal and disguise the ownership of quarter horses.

7. *FERNANDO SOLIS GARCIA*, a.k.a. "Freddy," a.k.a. "Fer." **GARCIA** was actively involved in the activities of money laundering operations in the United States. GARCIA would work with Defendants **JOSE TREVINO** and **NAYEN** in purchasing, training and racing quarter horses using various straw purchasers and placing quarter horses in various entities for the organization to disguise their true ownership. GARCIA is listed as an officer of GARCIA BLOODSTOCK, LLC., and has control of BONANZA RACING, LLC., which were front companies for Los Zetas' money laundering activities used to conceal and disguise the ownership of quarter horses.

8. *VICTOR MANUEL LOPEZ.* **LOPEZ** was actively involved in the activities of money laundering operations in the United States. **LOPEZ** worked under the direction of Defendant **NAYEN** and was responsible for making payments for the care and upkeep of quarter

horses via cash payments, wire transfers and personal checks using bulk currency, bulk currency deposits, and structured payments from Mexico into the United States.

9. *FELIPE ALEJANDRO QUINTERO.* **QUINTERO** worked as a race trainer for the quarter horses under the control of this organization in California. **QUINTERO** met with Defendants **JOSE TREVINO** and **NAYEN** to discuss the training of quarter horses and the method of payment to conceal the activities of Los Zetas. He advised members and associates of Los Zetas on quarter horse purchases, training and racing.

10. *ADAN FARIAS.* **FARIAS** worked as a race trainer for the quarter horses under the control of this organization and advised members and associates of Los Zetas on quarter horse purchases, training and racing. **FARIAS** met with Defendant **MIGUEL TREVINO** and others to discuss the laundering of drug proceeds via the quarter horse racing industry.

11. *RAUL RAMIREZ.* **RAMIREZ** was actively involved in the activities of the money laundering operation in the United States. **RAMIREZ** would bid for horses on behalf of the organization at auction to aid in disguising the true ownership of the horses.

12. *LUIS GERARDO AGUIRRE.* **AGUIRRE** operated as a straw-purchaser for Los Zetas organization in which he would purchase quarter horses in his name which would be transferred at a later date to Defendant **JOSE TREVINO** for little or no money.

13. *ERICK JOVAN LOZANO DIAZ.* **DIAZ** was involved in making payments for the organization. At the direction of **NAYEN**, he would collect bulk U.S. currency from **VICTOR LOPEZ** and structure the currency into accounts that was used for the purchase of quarter horses and other quarter horse related expenses.

## COUNT I
## 18 U.S.C. §1956(h)
### Conspiracy to Launder Monetary Instruments

Beginning in or about 2004, and continuing until on or about September, 2012, in the Western District of Texas and elsewhere, the Defendants,

**MIGUEL ANGEL TREVINO MORALES(1)**
aka "40"
**OSCAR OMAR TREVINO MORALES(2)**
aka "42"
**FRANCISCO ANTONIO COLORADO CESSA(6)**
aka Pancho
**LUIS GERARDO AGUIRRE (15)**
**ERICK JOVAN LOZANO-DIAZ (16)**

together and with others known and unknown to the Grand Jury, did unlawfully, willfully, and knowingly combine, conspire, confederate and agree among themselves and each other to commit certain offenses against the United States as follows:

(a) knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, (1) did conduct and attempt to conduct such a financial transaction which involved the proceeds of specified unlawful activity, that is, conspiracy to distribute controlled substances and extortion and bribery in sporting contests, (2) knowing that the transaction was designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of specified unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B); and,

(b) knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, did transport, transmit and transfer and attempt to transport, transmit and transfer a monetary instrument and funds from a place in the United States to or through a place outside the United States and to a place in the United States from or through a

place outside the United States knowing that such transportation was designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of specified unlawful activity, that is, conspiracy to distribute narcotics controlled substances and extortion and bribery in sporting contests, in violation of 18 U.S.C. § 1956(a)(2)(B);

All in violation of Title 18, United States Code, Section 1956(h).

## OVERT ACTS

In furtherance of the conspiracy and in order to effect the object thereof, the Defendants and their co-conspirators, known and unknown to the Grand Jury, committed and caused to be committed one or more of the following overt acts, among others, in the Western District of Texas and elsewhere:

OA1. From in or about 2004, Defendant FRANCISCO COLORADO CESSA received approximately $18 million dollars in drug proceeds from Efrain Torres, aka Z-14, a LOS ZETAS plaza boss. The money was an investment for the Los Zetas in Defendant FRANCISCO COLORADO CESSA and his business ADT PETROSERVICIOS. Defendant FRANCISCO COLORADO CESSA was the operator and apparent owner of ADT PETROSERVICIOS whom the Los Zetas were able call upon to aid in their for illegal operations, to include the purchase of horses.

OA2. On or about December 14, 2008, Ramiro Villarreal purchased a quarter horse named TEMPTING DASH for $21,500. On October 24, 2009 TEMPTING DASH won the Dash for Cash at Lone Star Park race track in Grand Prairie, Texas, listing Ramiro Villarreal as the owner. On November 14, 2009, the American Quarter Horse Association received paperwork

transferring the registration on TEMPTING DASH from Villarreal to Defendant JOSE TREVINO. TREVINO put the date of September 29, 2009 as the date of transfer, thus back-dating the transfer.

OA3. On or about September 4, 2009, LOS ZETAS drug cartel used CARLOS NAYEN, RAMIRO VILLAREAL and others to purchase approximately twenty-seven (27) horses at the Ruidoso Downs Yearling Quarterhorse sale. On September 6, 2009, defendant FRANCISCO ANTONIO COLORADO CESSA provided American Express Bank International Check #110 in the amount of $516,500, to the Ruidoso Downs Horse Sales Company to pay for 12 of the 27 horses to include, ONE FAMOUS PATRIOT for $205,000; MORNING CARTEL for $57,000 and FEATURE HONOR for $12,000. Subsequent to the sale, members of the organization changed the name of ONE FAMOUS PATRIOT to TAMAULIPAS BOY. Other individuals paid for other horses to include OCEAN'S APART for $300,000 which had its name changed to AQUI ESTE BEBE, and RACING DOWN A DREAM for $155,000 which had its name changed to NUMBER ONE CARTEL.

OA4. On or about August 25, 2010, quarter horses TAMAULIPAS BOY(One Famous Patriot), AQUI ESTE BEBE(Ocean's Apart) and NUMBER ONE CARTEL(Racing Down a Dream) were insured, via Yearsley Bloodstock Insurance, together in the same policy under TREMOR ENTERPRISES, operated by JOSE TREVINO and then switched in September 2010 to GARCIA BLOODSTOCK AND RACING c/o Fernando Garcia.

OA5. On December 21, 2009, Defendant JOSE TREVINO wrote one (1) check for $435,000, gained from the winnings of quarter horse TEMPTING DASH, from his Bank of America account 4881 1761 5000 to his TREMOR ENTERPRISES, LLC., account 4880 2680 1054. On December 22, 2009, JOSE TREVINO wrote two (2) checks: #1006 for $100,000 and

#1007 for $57,793, to himself totaling the amount of $157,793 from TREMOR ENTERPRISES, LLC., account and deposited the checks into his personal Bank of America account 4881 1761 5000. One week later JOSE TREVINO wrote one (1) check #1539 from the above personal account and deposited $150,000 back into the TREMOR ENTERPRISES, LLC., account, thus creating the appearance of personal income.

OA6. On or about January 14, 2010 at the Heritage Place Winter Mixed auction, Defendant JOSE TREVINO directed the purchase of a quarter horse named DASHIN FOLLIES for approximately $875,000 and a quarter horse named CORONITA CARTEL for approximately $250,000 in a nominee name. A $100,000 cash payment was made in the name of Defendant LUIS GERARDO AGUIRRE as part of the purchase price. GRUPO ADUANERO INTEGRAL AGENCIA ADU, a Mexican business entity controlled by Alejandro Barradas, made a number of wire transfers in excess of $900,000. In December 2010, ownership of these two horses was transferred into the name of Defendant LUIS GERARDO AGUIRRE. Payment for the care, boarding and feeding of these two horses was arranged for by Defendants CARLOS NAYEN and VICTOR LOPEZ. In January 29, 2012, these two horses were transferred to 66 LAND, LLC, an entity under the control of Defendants JOSE TREVINO and ZULEMA TREVINO and moved to Lexington, Oklahoma, thus amounting to a mere paper transfer.

OA7. On or about September 3-5, 2010, Defendants JOSE TREVINO, CARLOS NAYEN, SERGIO RINCON, RAUL RAMIREZ and others attended the Ruidoso Horse Sales Company Yearling Sales in Ruidoso, New Mexico. RAUL RAMIREZ bid on quarter horses on behalf of NAYEN and TREVINO. Members of the organization purchased twenty-three (23) horses for $2,240,700. After the auction, Defendant FRANCISCO ANTONIO COLORADO CESSA was listed on the auction paperwork as the owner and provided a check #101 drawn on

BBVA Compass Bank account 309345560 in the amount of $2,240,700 to pay for the horses. Only two (2) of these twenty-three (23) horses he purchased ultimately remained in Defendant FRANCISCO ANTONIO COLORADO CESSA's name. This purchase included quarter horse "FLY FIRST DOWN" which was purchased for $300,000.

OA8. On or about June 7, 2011, Defendant ZULEMA TREVINO wrote check #1301 on Bank of America account #48802680 in the amount of $400,000 to Defendant FRANCISCO ANTONIO COLORADO CESSA, with the notation in the memo section stating "Purchase of Fly First Down." This check was never negotiated. In June 2011, the ownership of quarter horse FLY FIRST DOWN was changed via American Quarterhorse Association records from CESSA to TREMOR ENTERPRISES, LLC. after winning a qualifying race on May 27, 2011, with no actual funds being exchanged at that time to provide the organization the appearance of legitimate proceeds through the purchase of a valuable quarter horse.

OA9. On or about September 2-4, 2011, CARLOS NAYEN, LUIS AGUIRRE and others purchased 18 horses in nominee names at Ruidoso Horse Sales Company. From on or about September 21, 2011 to September 29, 2011, Defendant FRANCISCO ANTONIO COLORADO CESSA wired and caused to be wired $2,352,500 from Mexico through the front company, ADT PETROSERVICIOS, for the purchase of these eighteen (18) horses in the following amounts:

> September 21, 2011 - $650,000
> September 21, 2011 - $689,000
> September 22, 2011 - $564,000
> September 26, 2011 - $445,000
> September 29, 2011 - $6,500

OA10. On or about November 5, 2011 at the Heritage Place Fall Mixed Sale in Oklahoma City, Oklahoma, FERNANDO GARCIA and CARLOS NAYEN assisted the

13

organization in purchasing eight (8) horses for a total of approximately $211,500. GARCIA acted as the surety for the purchase of the horses. During the same sale, Defendant JOSE TREVINO brought four (4) horses to be sold at auction. GARCIA also acted as the surety for the purchasers of these horses. In total, eight (8) new and four (4) repurchased horses were acquired by the organization.

Defendant JOSE TREVINO sold BLUES GIRL CHOICE for approximately $102,000; DEVIL RIDGE for approximately $100,000; NUMBER ONE CARTEL for approximately $280,000; and, FORTY FORCE for approximately $40,000. The price paid for NUMBER ONE CARTEL was greater than market value and was sold to members of his own organization in order to provide the appearance of a legitimate sale. All payment arrangements for all horses were made by NAYEN. From on or about November 14-21, 2011, Defendant FRANCISCO ANTONIO COLORADO CESSA acquired $1.7 million through a hard money loan with a ten percent (10%) monthly interest rate. From this amount, COLORADO CESSA sent to send $733,500 to Heritage Place Auction house in Oklahoma to pay the auction fees in the following manner:

> November 14, 2011 - $300,000 via Arian Jaff
> November 16, 2011 - $433,000 via Quick Loans
> November 21, 2011 - $500 via MTTM

.None of the horses purchased were placed in COLORADO CESSA's name.

OA11. On or about January 19-21, 2012, at the Heritage Place Winter Mixed Sale held in Oklahoma City, Oklahoma, Defendant FERNANDO GARCIA assisted in the purchase of five (5) horses and two (2) foals in utero. The horses were placed in the names of various nominees as the purchasers. The total cost was $280,400. On or about February 15, 2012, Defendant FRANCISCO ANTONIO COLORADO CESSA, through the front company, ADT

PETROSERVICIOS, wired and caused to be wired from Mexico to the United States $228,700, to cover part of the purchase price for these horses.

OA12. Beginning on February 28, 2012 until March 2, 2012, Defendant FERNANDO GARCIA directed eight (8) cash payments totaling $51,700, none of which were more than $10,000, to Heritage Place Auction House to pay the remaining balance owed for the purchase of various quarter horses at the Heritage Place 2012 Mixed Sale Auction as alleged in OA11.

OA13. On or about March 21, 2012, Defendant ZULEMA TREVINO wrote a second check #1628 on Bank of America account #4880 2680 1054 in the amount of $50,000 to Defendant FRANCISCO ANTONIO COLORADO CESSA, with the notation in the memo section stating "Purchase of Fly First Down."  This check was actually issued and negotiated by Defendant FRANCISCO ANTONIO COLORADO CESSA on April 20, 2012, four months following the death of the FLY FIRST DOWN on December 25, 2011. A $400,000 insurance payment was made for the horse on January 4, 2012 that was originally purchased for $300,000.

OA14. On or about March 2, 2012, GERARDO GARZA QUINTERO, opened JP Morgan Chase bank account #000000448606298.  Approximately $250,000 in U.S. Currency was deposited into this account from March 2, 2012 to March 5, 2012, along with an $18,000 check from Integra Logistica Aduanera, a front company owned and controlled by Defendant ERICK JOVAN LOZANO DIAZ. On March 3, 2012, GERARDO GARZA QUINTERO wrote check #000000001, in the amount of $300,000 payable to TREMOR ENTERPRISES, LLC with the notation in the memo section of the check stating, "Purchase of Feature Honor." This check cleared the bank on March 5, 2012.

OA15. From on or about March 26, 2012 to on or about April 4, 2012, approximately $400,000 was deposited into the JP Morgan Chase bank account #000000448606298 of

GERARDO GARZA QUINTERO. This included a $90,000 U.S. Currency deposit on March 26, 2012 and $213,000 wire transfer from the wife of Defendant ERICK JOVAN LOZANO DIAZ. On March 28, 2012, GERARDO GARZA QUINTERO wrote check number #139 in the amount of $400,000 payable to TREMOR ENTERPRISES, LLC with the notation in the memo section of the check stating, "Purchase of Fly Corona."

## NOTICE OF UNITED STATES OF AMERICA'S DEMAND FOR FORFEITURE

### I.
### Money Laundering Forfeiture Statutes and Violations
### [18 U.S.C. § 1956(h) and subject to forfeiture pursuant to 18 U.S.C. § 982(a)(1)]

As a result of the foregoing criminal violation as set forth in Count One of the Indictment, which is punishable by imprisonment for more than one year, **MIGUEL ANGEL TREVINO MORALES, OSCAR OMAR TREVINO MORALES, FRANCISCO ANTONIO COLORADO CESSA, LUIS GERARDO AGUIRRE, ERICK JOVAN LOZANO DIAZ** shall forfeit any and all right, title, and interest in the below-described property to the United States, pursuant to 18 U.S.C. § 982(a)(1), which states the following:

> **18 U.S.C. § 982. Criminal Forfeiture**
> (a)(1) The court, in imposing sentence on a person convicted of an offense in violation of section 1956, 1957, or 1960 of this title, shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property.

This Notice of Demand for Forfeiture includes, but is not limited to, the following:

### II.
### Personal Property Subject to Forfeiture

A. **Bank and Business Accounts:**

$648.46, more or less, in United States currency seized from BBVA Compass Bank, Account Number ******5560, in the name of Francisco Antonio Colorado Cessa;

Any and all funds in UBS AG, Account Number XXXX1138 in the name of Francisco Colorado Cessa and his wife, Maria Emma Salmon Rocha;

Any and all funds in UBS AG, Account Number XXXX3021 in the name of ADT PETROSERVICIOS SA de CV;

Any and all funds in UBS AG, Account Number XXXX4555 in the name of ADT PETROSERVICIOS SA de CV; and

Any and all funds in UBS AG, Account Number XXXX4565 in the name of ADT PETROSERVICIOS SA de CV.

**B.  Aircrafts:**

1. 2005 Raytheon Aircraft Company Hawker 800XP; Registration Number N824LX; Serial Number 258740, and the records related thereto, to include but not limited to: airframe and power plant appliance records, current aircraft inspection status records, historical aircraft maintenance records and all aircraft log books, located at Hawker-Beechcraft Services-Houston, 8401 Nelms Street, Houston, Texas 77061 (Houston Hobby Airport) and any proceeds derived from the sale of said aircraft; and

2. 2005 Raytheon Aircraft Company Beechcraft King Air B200; Registration Number XA-RDJ; Serial Number BB-1907, and the records related thereto, to include but not limited to: airframe and power plant appliance records, current aircraft inspection status records, historical aircraft maintenance records and all aircraft log books, located at Hawker-Beechcraft Services-Houston, 8401 Nelms Street, Houston, Texas 77061 (Houston Hobby Airport) and any proceeds derived from the sale of said aircraft.

**C.  Horses:**

Any and all horses owned by Defendant **FRANCISCO ANTONIO COLORADO CESSA(6)** including, but not limited to, the following:

1. A horse named Mi Pequena Amor (formally known as Too Tempting) seized at Ruidoso, NM and any proceeds derived for the sale of said horse;

2. A horse named KM K11 seized at Ruidoso, NM and any proceeds derived from the sale of said horse;

3. A horse named Special Country Chick seized at Ruidoso, NM and any proceeds derived from the sale of said horse;

4. A horse named Mi Bebe (formally known as Dream Girl Jess) seized from Lexington, OK and any proceeds derived from the sale of said horse;

5. A horse named Whole Lotta Shake, seized from Lexington, OK and any proceeds derived from the sale of said horse;

6. A horse named Juanita Mi Amor (formally known as Night Jasmine), seized from Lexington, OK and any proceeds derived from the sale of said horse;

7. A horse named Feature Ms. Bunny, seized at Ruidoso, NM and any proceeds derived from the sale of said horse;

8. A horse named Dashing Little Reba, seized at Guthrie, OK and any proceeds derived from the sale of said horse; and,

9. A horse named Loose Chick, seized at Elgin, TX and any proceeds derived from the sale of said horse;

### III.
### Money Judgment

Upon conviction of the offense set forth in Count One, Defendants **MIGUEL ANGEL TREVINO MORALES, OSCAR OMAR TREVINO MORALES, FRANCISCO ANTONIO COLORADO CESSA, LUIS GERARDO AGUIRRE, ERICK JOVAN LOZANO DIAZ** shall forfeit to the United States, pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure and 18 U.S.C. § 982(a)(1), the following described Money Judgment of Forfeiture:

A sum of money equal to Sixty Million Dollars in United States currency ($60,000,000.00), representing the amount of money derived from or traceable to

the proceeds obtained directly or indirectly from the commission of the offenses described above in Count One for which Defendants **MIGUEL ANGEL TREVINO MORALES, OSCAR OMAR TREVINO MORALES, FRANCISCO ANTONIO COLORADO CESSA, LUIS GERARDO AGUIRRE, ERICK JOVAN LOZANO DIAZ** and all other co-defendants in the instant case are jointly and severally liable for.

IV.
## Substitute Assets

If the money judgment described above as being subject to forfeiture pursuant to 18 U.S.C. § 982(a)(1), as a result of any act or omission of **MIGUEL ANGEL TREVINO MORALES, OSCAR OMAR TREVINO MORALES, FRANCISCO ANTONIO COLORADO CESSA, LUIS GERARDO AGUIRRE, ERICK JOVAN LOZANO DIAZ**

.cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third person;
    c.    has been placed beyond the jurisdiction of the Court;
    d.    has been substantially diminished in value; or
    e.    has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States of America to seek forfeiture of any other property up to the value of said money judgment described above.

A TRUE BILL:

**ORIGINAL SIGNATURE REDACTED PURSUANT TO E-GOVERNMENT ACT OF 2002**

RICHARD L. DURBIN, JR.
United States Attorney

By: *[signature]*
DOUGLAS W. GARDNER
Assistant United States Attorney